# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH HOOK, | : | Case No. 1:18-cv-56 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| ASCENDUM SOLUTIONS, LLC, *et al*., | : | |
| | : | |
| Defendants. | : | |

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, EXPEDITED OPT-IN DISCOVERY, AND COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS (Doc. 22)

This civil action is before the Court on Plaintiff Joseph Hook's ("Hook") Motion for Conditional Certification, Expedited Opt-in Discovery, and Court-Supervised Notice to Potential Opt-in Plaintiffs (Doc. 22) (the "Motion"), as well as the parties' responsive memoranda (Docs. 22-1, 37, 39, 41, 41-1, 42, 43).[1]

## I. BACKGROUND

### A. The Underlying Facts

Hook initiated this collective action, on behalf of himself and other "similarly-situated" persons, under the Fair Labor Standards Act (the "FLSA"). (Doc. 1 at ¶ 1). Hook is an individual, residing in Ohio. (*Id.* at ¶ 2). Between 2016 and 2017, Hook

---

[1] On March 15, 2019, Defendants filed a motion for leave to file a sur-reply memorandum. (Doc. 41). As the Court has considered the arguments raised in the sur-reply memorandum, as well as the parties' responsive memoranda, that motion is now moot. (Docs. 41-1, 42, 43).

worked for Defendants Ascendum Solutions, LLC ("Ascendum") and loanDepot.com, LLC ("loanDepot") as an underwriter.[2]  (*Id.* at ¶¶ 3, 14–15).

Ascendum is an Ohio company, with offices in Ohio.  (Doc. 1 at ¶ 4).  loanDepot is a California company, with offices nationwide.  (*Id.* at ¶ 7; Doc. 37-1 at ¶ 11).  At all relevant times, Ascendum and loanDepot employed underwriters.  (Doc. 1 at ¶¶ 14–16).  The underwriters employed by Ascendum and loanDepot performed a variety of services, depending on the types loans to which they were assigned.  (*See* Docs. 37-1, 37-2).

Initially, Ascendum classified all of its underwriters as exempt—*i.e.*, exempt from FLSA requirements.  (Doc. 37-3 at ¶ 8).  In 2016, Ascendum decided to reclassify some of its underwriters as non-exempt—*i.e.*, not exempt from FLSA requirements.  (*Id.*)  In 2018, Ascendum decided to reclassify the rest of its underwriters as non-exempt.  (Doc. 39-3 at ¶¶ 6–7).  loanDepot classifies all of its underwriters as non-exempt.  (*See* Doc. 37-1 at ¶¶ 6–14).

In his Complaint, Hook alleges that Ascendum and loanDepot had their underwriters (including Hook and other similarly situated persons) work more than 40 hours per week.  (Doc. 1 at ¶ 17).  And Hook alleges that, despite this fact, Ascendum and loanDepot failed to pay their underwriters (including Hook and other similarly situated persons) overtime, as required by the FLSA.  (*Id.* at ¶ 18).

---

[2] There is a dispute as to whether Ascendum and loanDepot jointly employed Hook (and other similarly situated persons).  (Doc. 37 at 10 n.2).  However, as Defendants admit, this issue is not "presently before the Court."  (*Id.*)  Both sides have submitted evidence in support of their positions, and it is not the Court's job, at this point in time, to weigh that evidence.  *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 869 (S.D. Ohio 2017) ("The Court does not weigh evidence or evaluate the merits of the parties' claims at the conditional certification stage.").

### B. The Parties' Declarations

Hook has submitted declarations, asserting: that Hook worked for both Ascendum and loanDepot (*see, e.g.*, Doc. 22-3 at ¶ 2); that Ascendum and loanDepot are related entities, whose underwriters have similar job responsibilities (Doc. 22-3; Doc. 22-4; Doc. 39-1 at ¶¶ 7–11); and that Ascendum and loanDepot failed to pay their underwriters (including Hook) overtime compensation. (Doc. 39-1 at ¶¶ 2–5; Doc. 39-2 at ¶¶ 2–5).

Defendants have submitted declarations, asserting: that Hook worked for Ascendum, not loanDepot (Doc. 41-2 at ¶¶ 4–7); that Ascendum and loanDepot are separate entities, whose underwriters have varied job responsibilities (Docs. 37-1, 37-2); and that Ascendum and loanDepot compensated their underwriters differently, under different policies (Doc. 37-1 at ¶¶ 6–8; Doc. 37-3 at ¶ 5).[3]

To date, 11 opt-in plaintiffs have submitted declarations, asserting that they worked for Ascendum and loanDepot as underwriters, and claiming that, during their employment, neither they nor Ascendum and loanDepot's other underwriters "receive[d] overtime compensation" at "one-and-one-half" times their "regular rates." (Docs. 3, 19–20, 25–26, 28, 30, 32–35, 40 (stating that they "observed" that other underwriters "did not receive overtime compensation")).

Of the underwriter-declarants, two (including Hook) claim to have worked at both Defendants' Ohio and Texas locations. (Doc. 39-1 at ¶ 3; Doc. 39-2 at ¶ 3). The rest

---

[3] There is also a dispute as to whether Hook was hired as a non-exempt employee, then reclassified as an exempt employee. (*Compare* Doc. 39 at 7, *and* 39-1 at ¶ 4 (claiming that Hook was originally classified as a non-exempt employee), *with* Doc. 41-1 at 5, *and* 41-2 at ¶ 8 (claiming that Hook was never classified as a non-exempt employee)).

3

appear to have worked at only Defendants' Ohio location.[4] (*Compare* Doc. 37 at 14 (asserting that Hook and all opt-in plaintiffs worked in Ohio), *with* Doc. 39 at 4 (countering that Hook and at least one opt-in plaintiff worked in Texas)).

### C. The Procedural Posture

On July 13, 2018, Hook filed this Motion. (Doc. 22). In the Motion, Hook seeks the conditional certification of, and thus the right to send opt-in notices to, the following class of persons: "[a]ll former and current underwriters employed by [Ascendum] and/or [loanDepot] at any time between January 26, 2015 and the present." (Doc. 1 at ¶ 22). Hook also seeks certain expedited discovery. (Doc. 22).

## II. STANDARD OF REVIEW

The FLSA allows employees, under certain circumstances, to collectively sue an employer to recover unpaid overtime compensation. *See* 29 U.S.C. § 216(b). In relevant part, the statute provides:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to

---

[4] The Court uses the word "appear" because most of the declarations submitted by the opt-in plaintiffs' do not say—explicitly—where the opt-in plaintiffs worked. (Docs. 3, 19–20, 25–26, 28, 30, 32–35, 40). None of the declarations submitted by the opt-in plaintiffs indicate that the opt-in plaintiffs worked anywhere other than Ohio and/or Texas. (Docs. 3, 19–20, 25–26, 28, 30, 32–35, 40).

4

>become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Accordingly, 29 U.S.C. § 216(b) establishes two requirements for a collective action: (1) the plaintiffs must be "similarly situated" and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

The Sixth Circuit has implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action. *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-CV-432, 2015 WL 4112312, at *2 (S.D. Ohio July 7, 2015) (citing *In re HCR ManorCare, Inc.*, No. 11-3866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011)). At the first stage, the Court must determine whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011). At the second stage, the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiffs' claims. *Id.*

When considering a pre-discovery motion for conditional certification, the Court does not consider the merits of the claims, resolve factual disputes, or analyze credibility. *Swigart*, 276 F.R.D. at 214. Doing so would "intrude improperly into the merits of the action." *Lacy v. Reddy Elec. Co.*, No. 3:11-CV-52, 2011 WL 6149842, at *3 (S.D. Ohio Dec. 9, 2011) (quoting *Murton v. Measurecomp LLC*, No. 1:07-CV-3127, 2008 WL 5725631, at *5 (N.D. Ohio June 9, 2008)); *see Hamm*, 275 F. Supp. 3d at 869 ("The

Court does not weigh evidence or evaluate the merits of the parties' claims at the conditional certification stage.").

### III. ANALYSIS

In this case, Hook seeks to represent "[a]ll former and current underwriters employed by [Ascendum] and/or [loanDepot] at any time between January 26, 2015 and the present." (Doc. 1 at ¶ 22). As set forth *infra*, Hook has established that he is similarly situated to other members of the putative class. However, Hook has not established that nationwide certification is proper at this time. Thus, opt-in notices should go out to all former and current underwriters employed by Ascendum and/or LoanDepot, in Ohio and/or Texas, at any time between January 26, 2015 and the present.

#### A. Similarly Situated

As an initial matter, Hook has established that he is similarly situated to other members of the putative class.

The FLSA does not define the term "similarly situated." However, the Sixth Circuit has found that employees are similarly situated if they "suffer from a single[] FLSA-violating policy," or if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Ford v. Carnegie Mgmt. Servs.*, No. 2:16-CV-18, 2016 WL 2729700, at *2 (S.D. Ohio May 11, 2016) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)).

At the first stage of the similarly situated analysis (the stage at issue here), a plaintiff must only make a "modest showing" that he/she is "similarly situated to the

proposed class of employees." *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011). This standard is "fairly lenient" and "typically results in conditional certification." *Id.* (quoting *Comer*, 454 F.3d at 547). Ultimately, the issue of whether to grant conditional certification is within the district court's discretion. *Comer*, 454 F.3d at 546.

In this case, Hook seeks to represent underwriters, "employed by [Ascendum] and/or [loanDepot]," between January 26, 2015 and the present. (Doc. 1 at ¶ 22). Hook has submitted declarations, asserting: that he worked for Ascendum and loanDepot (jointly) as an underwriter (Doc. 22-3 at ¶ 2); that Ascendum and loanDepot are related entities, whose underwriters have similar job responsibilities (Doc. 22-3; Doc. 22-4; Doc. 39-1 at ¶¶ 7–11); and that Ascendum and loanDepot failed to pay their underwriters (including Hook) overtime compensation. (Doc. 39-1 at ¶¶ 2–5; Doc. 39-2 at ¶¶ 2–5).

Moreover, 11 opt-in plaintiffs have submitted declarations, asserting: that they worked for Ascendum and loanDepot (jointly) as underwriters; that Ascendum and loanDepot failed to pay them "overtime compensation" at "one-and-one-half" times their "regular rates"; and that Ascendum and loanDepot failed to pay other underwriters "overtime compensation" at "one-and-one-half" times their "regular rates." (Docs. 3, 19–20, 25–26, 28, 30, 32–35, 40 (stating that they "observed" that other members of the putative class "did not receive overtime compensation")).

The Court finds this evidence more than sufficient to establish that Hook is similarly situated to other members of the putative class—at least at the first stage of the similarly situated analysis. *See, e.g.*, *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D.

7

431, 433–34 (D. Kan. 2007) ("Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy[,] or plan.").

Defendants raise three main arguments in opposition to this conclusion. However, the Court does not find any of them persuasive.

### 1. *Job Responsibilities*

First, Defendants argue that conditional certification is not proper because Ascendum and loanDepot are different companies, whose underwriters have varied job responsibilities. (Doc. 37 at 1, 16–19). The Court disagrees.

Under the similarly situated analysis, a plaintiff must show that "his[/her] position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47 (citation omitted). Moreover, numerous courts have held that "disparate . . . employment settings" should be "considered at the second," not the first, "stage" of the similarly situated analysis. *White v. MPW Indus. Servs. Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006); *see also Hane v. On Time Securing, Inc.*, No. 5:16-CV-2002, 2017 WL 4169646, at *3 n.7 (N.D. Ohio Sept. 20, 2017) (same).

In this case, Hook has advanced evidence that Ascendum and loanDepot jointly employed him and (at least) 11 other putative class members, as underwriters. (Docs. 3, 19–20, 22-3, 25–26, 28, 30, 32–35, 40). Moreover, Hook has advanced evidence that Ascendum and loanDepot's underwriters performed (largely) the same job responsibilities. (Doc. 39-1 at ¶¶ 7, 10; Doc. 39-2 at ¶¶ 7, 10). By advancing this

8

evidence, Hook has made a modest showing that his job responsibilities are similar to Ascendum and loanDepot's other underwriters'.

Any differences in the underwriters' day-to-day tasks—such as those set out in detail in Defendants' opposition—are better considered at the second stage of the similarly situated analysis. (Doc. 37 at 2–9); *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 827 (E.D. Mich. 2009) (rejecting the argument that a putative class was not similarly situated, at the first stage of the similarly situated analysis, "because the targeted employees worked in different facilities and business units, had different job duties, and were supervised by different managers"). Defendants' first argument fails.

### 2. *Common Policy*

Second, Defendants argue that conditional certification is not proper because Ascendum and loanDepot compensated their employees under two different policies. (Doc. 41-1 at 4). Again, the Court disagrees.

Under the similarly situated analysis, a plaintiff "does not need to demonstrate that he[/she] and the putative class members suffered from a single . . . policy." *Parker v. Breck's Ridge, LLC*, No. 2:17-CV-633, 2018 WL 551328, at *4 (S.D. Ohio Jan. 24, 2018). A plaintiff can "demonstrate that his[/her] and the putative class members' claims are 'unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Id.* (quoting *Ford*, 2016 WL 2729700, at *2).

In this case, Hook has submitted declarations, asserting that both Ascendum and loanDepot failed to pay him overtime compensation at a rate of one-and-one-half times

9

his normal pay. (Doc. 3 at ¶ 6; Doc. 39-1 at ¶ 5). To date, 11 opt-in plaintiffs have submitted declarations, asserting the same. (*See* Docs. 3, 19–20, 25–26, 28, 30, 32–35, 40 (stating that they "observed" that other members of the putative class "did not receive overtime compensation")). This evidence constitutes a modest showing that putative class members suffered from common statutory violations.

In light of this evidence, whether Ascendum and loanDepot technically compensated their employees under two different policies has no bearing on conditional certification. *See, e.g.*, *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 485–86 (S.D. Ohio 2014) (holding that a putative class was entitled to conditional certification, even though its members were apparently employed by "different restaurants, owned by different entities," as its members had alleged similar "unlawful pay practices"). Defendants' second argument fails.

### 3. *Exempt/Non-Exempt Status*

Finally, Defendants argue that conditional certification is not proper because the proposed class contains both exempt and non-exempt underwriters. (Doc. 37 at 11–12). Yet again, the Court disagrees.

Courts have the discretion to reshape classes. *Shipes v. Amurcon Corp.*, No. 2:10-CV-14943, 2012 WL 995362, at *6 (E.D. Mich. Mar. 23, 2012). Multiple courts have used that broad discretion to subdivide classes, containing both exempt and non-exempt employees, into subclasses. *Mathews v. ALC Partner, Inc.*, No. 2:08-CV-10636, 2009 WL 2591497, at *10 (E.D. Mich. Aug. 24, 2009), *modified*, No. 2:08-CV-10636, 2009

10

WL 10680524 (E.D. Mich. Oct. 27, 2009); *Prater v. Commerce Equities Mgmt. Co.*, Inc., No. 4:07-CV-2349, 2007 WL 4146714, at *7 (S.D. Tex. Nov. 19, 2007).

In this case, Hook seeks to represent underwriters, "employed by [Ascendum] and/or [loanDepot]," between January 26, 2015 and the present. (Doc. 1 at ¶ 22). Defendants correctly point out that Hook's putative class will likely contain both exempt and non-exempt employees. (Doc. 37 at 11–12). Moreover, Defendants correctly point out that this difference (exempt v. non-exempt status) threatens to render the putative class dissimilar. (*Id*. at 11–12). However, the Court does not believe that these points prevent conditional certification.

The practical solution is to subdivide the putative class into exempt and non-exempt subclasses. Exempt and non-exempt subclasses seem particularly appropriate where, as here, it appears that many of the putative class members have been classified as both exempt and non-exempt employees, at different points in their careers. (*See, e.g.*, Doc. 37-3 at ¶ 8 (indicating that Ascendum has reclassified many of its underwriters); Doc. 39-3 at ¶¶ 6–7 (same); Doc. 39-1 at ¶ 4 (asserting that Hook has worked as both an exempt and a non-exempt employee)). As a result, Defendants' third argument fails.[5]

---

[5] There may be some overlap between the members of the exempt and non-exempt subclasses. For example, as Hook claims to have been denied overtime compensation as both an exempt and a non-exempt employee, Hook will likely be a member of both the subclasses. However, the Court does not see this as a problem—at least not at the conditional certification stage. *See, e.g.*, *Stephens v. Farmers Rest. Grp.*, 291 F. Supp. 3d 95, 121 (D.D.C. 2018) (conditionally certifying multiple sub-classes, notwithstanding the fact that there would be some overlap between their members); *Berndt v. Cleary Bldg. Corp.*, No. 3:11-CV-791, 2013 WL 3287599, at *12 (W.D. Wis. Jan. 25, 2013) (conditionally certifying multiple subclasses, noting that "[m]embership in multiple classes is possible, and indeed highly likely, for many class members").

For all these reasons, Hook has established that he is similarly situated to other members of the putative class—at least at the first stage of the similarly situated analysis.[6]

### B. Nationwide Certification

While Hook has established that he is similarly situated to other members of the putative class, he has not established that nationwide certification is proper at this time.

To achieve nationwide certification, a plaintiff must make a modest showing that the FLSA violations alleged are the result of a nationwide practice. *See Brodzenski v. Stonemor Partners, L.P.*, No. 1:14-CV-2517, 2015 WL 3442323, at *2 (N.D. Ohio May 28, 2015); *Pittman v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:09-CV-878, 2009 WL 10693400, at *7 (D. Nev. Sept. 1, 2009). "Unsupported assertions" that

---

[6] Defendants also claim that the Court should exclude loanDepot's underwriters from the putative class. However, each of Defendants' arguments in support of this claim asks the Court to analyze the legal theories and factual assertions underlying Hook's claims. This is not proper on a pre-discovery motion for conditional certification. *See Lacy*, 2011 WL 6149842, at *3. For example, Defendants argue that the Court should exclude loanDepot's underwriters from the putative class, because Hook's claims are really misclassification claims, and none of loanDepot's underwriters was "misclassified" as an exempt employee. (Doc. 37 at 10–11). Similarly, Defendants argue that the Court should exclude loanDepot's underwriters from the putative class, because loanDepot's underwriters were classified as non-exempt employees, and Hook has failed to "articulat[e] a theory of liability" for Defendants' non-exempt employees. (*Id.* at 15–16). But, Hook has alleged that Ascendum and loanDepot denied their employees overtime compensation, regardless of their classification. (*See, e.g.*, Doc. at 1 at ¶ 1 (alleging that "Defendants[]" failed to pay their underwriters overtime compensation)). And Hook has submitted declarations asserting the same. (*See, e.g.*, Doc. 39-1 at ¶¶ 2–5 (asserting that Defendants failed to pay Hook overtime compensation while he was an exempt and a non-exempt employee); Doc. 39-2 at ¶¶ 2–5 (asserting that Defendants failed to pay Regina Caprice Rush-Hook overtime compensation while she was an exempt and a non-exempt employee). The Court understands that Defendants vehemently dispute Hook's legal theories and factual assertions. However, it is not the Court's job, at this point in time, to analyze them. *See Lacy*, 2011 WL 6149842, at *3. It may well turn out that loanDepot's underwriters do not belong in a class with Ascendum's. However, this analysis is better conducted in a motion to decertify, post-discovery. *Hughes*, 2015 WL 4112312, at *2.

violations are "widespread" are not sufficient to permit nationwide certification. *Pittman*, 2009 WL 10693400, at *7.

When a plaintiff cannot make this modest showing, numerous courts have determined that it is proper to limit the geographic scope of the putative class to the locations of the violations evidenced. *See Feustel v. Careerstaff Unlimited, Inc.*, No. 1:14-CV-264, 2015 WL 13021897, at *3 (S.D. Ohio Mar. 25, 2015); *Gomez v. ERMC Prop. Mgmt. Co., LLC*, No. 3:13-CV-1081, 2014 WL 1513945, at *2 (N.D. Ohio Apr. 16, 2014); *c.f. Lemmon v. Harry & David Operations, Inc.*, No. 2:15-CV-779, 2016 WL 234854, at *4–5 (S.D. Ohio Jan. 20, 2016).

For example, in *Engel*, the court limited the geographic scope of a putative class of Area Managers, to Ohio and Kentucky, after reasoning as follows:

> Plaintiffs submitted little evidence to support a conditional class outside Ohio. No potential plaintiffs outside of Ohio were identified, and no affidavits of potential plaintiffs outside of Ohio were submitted. The only evidence of potential similarity outside of Ohio is based upon [one employee's] experience in the grand opening and clean-up of [a] store in Lexington, Kentucky. [That employee] testified that she observed the Area Managers in the Lexington, Kentucky store doing the same work a[s] the Area Managers in her store in Cincinnati, Ohio. . . . [Based on this evidence,] the Court concludes that Plaintiffs have only established a conditional class consisting of the Area Managers in the Ohio and Kentucky retail stores.

*Engel v. Burlington Coat Factory Direct Corp.*, No. 1:11-CV-759, 2013 WL 2417979, at *4 (S.D. Ohio June 3, 2013) (citations omitted).

Similarly, in *Ware*, the court limited the geographic scope of a putative class of customer service representatives to Tennessee and Colorado, after reasoning as follows:

13

> While the plaintiffs have made the modest showing required for conditional certification of a class of current and former employees at [Defendant]'s [Tennessee] and [Colorado] call centers, they have not made a similar showing with respect to current and former employees at [Defendant]'s other call centers nationwide. The plaintiffs have not worked at any other [Defendant] call center outside of [Tennessee] or [Colorado] and have not presented a declaration from any current or former employee who worked at any such facility. Accordingly, the plaintiffs' request that current and former [Defendant] employees who worked at call centers nationwide be included in the conditional class and receive notice will be denied.

*Ware v. T-Mobile USA*, 828 F. Supp. 2d 948, 954 (M.D. Tenn. 2011).[7]

In this case, Defendants ask the Court to limit the putative class to Ohio (*i.e.*, Ascendum) underwriters. (Doc. 37 at 12–15). Defendants argue Hook only has personal knowledge of the compensation practices applicable to their Ohio (*i.e.*, Ascendum) underwriters. (*Id.* at 12–15). Hook asks the Court to extend the putative class to all (*i.e.*, Ascendum and loanDepot) underwriters, nationwide. (Doc. 22-1 at 9). Hook argues he has submitted evidence sufficient to show that Defendants failed to pay their underwriters overtime as part of a "companywide" practice. (*Id.* at 1; Doc. 39 at 4–5).

Turning to the facts, 12 underwriters have asserted that Ascendum and loanDepot failed to pay them (and other putative class members) overtime. Two claim to have

---

[7] *Compare Heibel v. U.S. Bank Nat. Ass'n*, No. 2:11-CV-00593, 2012 WL 4463771, at *5 (S.D. Ohio Sept. 27, 2012) (evidence that violations spanned five different states sufficient to warrant nationwide certification), *and Pendlebury v. Starbucks Coffee Co.*, No. 9:04-CV-80521, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005) (evidence that violations spanned four different states sufficient to warrant nationwide certification), *with Engel*, 2013 WL 2417979, at *4 (evidence that violations spanned two states not sufficient to warrant nationwide certification), *and Ware*, 828 F. Supp. 2d at 954 (evidence that violations spanned two states not sufficient to warrant nationwide certification).

14

worked at both Defendants' Ohio and Texas locations. (Doc. 39-1 at ¶ 3; Doc. 39-2 at ¶ 3). The rest appear to have worked at only Defendants' Ohio location. (Doc. 37 at 14; Doc. 39 at 4). Apart from the boilerplate assertion that each has "observed" Defendants participate in FLSA violations, none has advanced evidence that the alleged wrongs persist outside of Ohio and Texas. (Docs. 3, 19–20, 25–26, 28, 30, 32–35, 40).

Per these facts, the proper geographic scope sits between the parties' requests. While Hook has submitted declarations (based on personal knowledge) asserting that unlawful pay practices have occurred at Defendants' Ohio and Texas locations, Hook has not submitted declarations (based on personal knowledge) asserting that unlawful pay practices persist elsewhere, as part of a nationwide practice. Thus, the Court will limit the class to underwriters who have worked for Ascendum and/or loanDepot, in either Ohio and/or Texas.[8] *See Engel*, 2013 WL 2417979, at *4; *Ware*, 828 F. Supp. 2d at 954.

### C. Administrative Matters

Finally, the Court concludes that it is proper to employ a three (as opposed to two) year notice period, and it is proper to allow Hook to conduct limited discovery.

#### 1. *Notice Period*

First, it is proper to employ a three (as opposed to two) year notice period.

"The FLSA has a two-year statute of limitations, subject to extension to three

---

[8] In reaching this conclusion, the Court notes that Hook is free to renew his Motion if/when discovery indicates that a nationwide practice exists, justifying a nationwide class. *See, e.g.*, *Engel*, 2013 WL 2417979, at *4 (inviting a plaintiff leave to renew its motion for conditional certification if/when reveals support for expanding the conditional class); *see also Feustel*, 2015 WL 13021897, at *3 (same).

15

years for a willful violation." *Stout v. Remetronix, Inc.*, No. 3:13-CV-026, 2013 WL 4048241, at *5 (S.D. Ohio Aug. 9, 2013). A "willful" violation exists on a showing of knowledge or reckless disregard. *Id.* In this case, Defendants argue that the notice period should be limited to two years, as Hook has failed to advance evidence of willfulness. (Doc. 37 at 19). Hook counters that the notice period should be extended to three years, as it is too early to determine whether willfulness exists. (Doc. 39 at 10).

The Court agrees that it is too early to make the merit-based determination of whether willfulness exists. As a result, the Court concludes that the notice period should span three years, for now. *See, e.g.*, *Heaps v. Safelite Sols., LLC*, No. 2:10-CV-729, 2011 WL 1325207, at *6 (S.D. Ohio Apr. 5, 2011) ("Plaintiffs request that the Court expedite discovery and send notice to individuals employed as CSRs in the past three years. Safelite argues that . . . 'there is no evidence that Safelite willfully violated the FLSA.' . . . Plaintiffs, however, contend that Safelite's willfulness should not be determined until later in the proceedings. Plaintiffs' argument is well taken.").

### 2. *Limited Discovery*

Second, it is proper to allow Hook to conduct limited discovery.

Initially, Hook sought to obtain the following, via expedited discovery: the home addresses, phone numbers, and email addresses of "all former and current underwriters," employed by Ascendum and/or loanDepot, at any time between January 26, 2015 and the present. (Doc. 22-5). However, after reviewing the authorities cited in Defendants' opposition, Hook withdrew his requests for (1) the email addresses of Ascendum and

16

loanDepot's current underwriters, and (2) the phone numbers of Ascendum and loanDepot's former and current underwriters. (Doc. 37 at 19–20; Doc. 39 at 10).

The Court finds this compromise reasonable. As a result, Hook is entitled to seek expedited discovery on: (1) the home addresses of all former and current underwriters employed by Ascendum and/or LoanDepot, in Ohio and/or Texas, at any time between January 26, 2015 and the present; (2) the email addresses of all former underwriters employed by Ascendum and/or LoanDepot, in Ohio and/or Texas, at any time between January 26, 2015 and the present; and (3) the dates of employment of every individual identified in response to (1) and (2).

### IV. CONCLUSION

Based upon the foregoing, the Motion (Doc. 22) is **GRANTED IN PART AND DENIED IN PART**.

The Court conditionally certifies the following subclasses:

> EXEMPT CLASS All former and current underwriters employed by Ascendum and/or LoanDepot, in Ohio and/or Texas, who were classified as exempt from the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, at any time between January 26, 2015 and the present.

> NON-EXEMPT CLASS All former and current underwriters employed by Ascendum and/or LoanDepot, in Ohio and/or Texas who were classified as non-exempt from the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, at any time between January 26, 2015 and the present.

Within 10 days of this Order, the parties shall submit to the Court proposed language for notification and consent forms to be issued by the Court apprising potential plaintiffs of their rights under the FLSA to opt in as parties to this litigation. In drafting

the proposed notification language, the parties should "be scrupulous to respect judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).

Within 15 days of this Order, Defendants shall provide Hook with:

1. The home addresses of all former and current underwriters employed by Ascendum and/or LoanDepot, in Ohio and/or Texas, at any time between January 26, 2015 and the present;

2. The email addresses of all former underwriters employed by Ascendum and/or LoanDepot, in Ohio and/or Texas, at any time between January 26, 2015 and the present; and

3. The dates of employment of every individual identified in response to the previous two requests.

**IT IS SO ORDERED.**

Date:        6/4/19                                                          *s/ Timothy S. Black*
                                                                             Timothy S. Black
                                                                             United States District Judge